UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHARNIKA ARMSTEAD,

                   Plaintiff,

     v.

WASHINGTON CORRECTIONS CENTER
FOR WOMEN, et al.,

                 Defendants.

Case No. C18-5475-RBL-TLF

REPORT AND
RECOMMENDATION

Noted for <u>January 3, 2020</u>

This matter is before the Court on defendants' filing of a motion for summary judgment (Dkt. 18). Plaintiff has brought suit under 42 U.S.C. § 1983 against defendants Washington Corrections Center for Women (WCCW) as well as WCCW employees Keith C. Ebel, Cheryl Zurawski, and Deborah Jo Wofford. Dkt. 6. Specifically, plaintiff alleges violations of her Fourth and Thirteenth Amendment rights related to an alleged "assault" and "use of excessive force" by defendant Ebel, a prison guard, when plaintiff was a prisoner at WCCW. *Id.* Plaintiff appears to allege these same events constituted an actionable incident under the Prisoner Rape Elimination Act ("PREA") and that defendant Wofford, Superintendent at WCCW, did not handle plaintiff's PREA complaint according to Department of Corrections (DOC) policy. *Id.*

Plaintiff alleges defendant Zurawski, also a prison guard at WCCW, failed to perform tier checks after the incident and deliberately denied her access to sanitary napkins and toilet paper "as a result of her failure to act." *Id.* Plaintiff also alleges retaliation by "officers", that she has

1   called mental health emergencies and not received treatment, and violations of the Washington

2   State Public Records Act (RCW 42.56). *Id.*

3          This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of*

4   *H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For

5   the reasons set forth below, the undersigned recommends the Court grant defendants' motion for

6   summary judgment (Dkt. 18). The Court should dismiss plaintiff's claims against defendant

7   Washington Corrections Center for Women (WCCW) and her claims regarding alleged PREA

8   violations with prejudice. The Court should dismiss plaintiff's claim regarding inadequate mental

9   health care against the named defendants with prejudice pursuant to 28 U.S.C. § 1915A for

10  failure to state a claim. The Court should dismiss plaintiff's remaining federal claims against the

11  remaining defendants, Ebel, Zurawski, and Wofford, without prejudice for failure to exhaust

12  administrative remedies. The Court should decline to exercise supplemental jurisdiction over

13  plaintiff's remaining state law claim for violation of the Washington State Public Records Act

14  (RCW 42.56) and dismiss that claim without prejudice. Finally, the Court should decline to issue

15  a strike under 42 U.S.C. § 1915(g).

16                                      FACTUAL AND PROCEDURAL HISTORY

17          Plaintiff alleges in her amended complaint that on May 4, 2018, WCCW was on

18  lockdown. Dkt. 6. She alleges she asked defendant Zurawski for sanitary napkins and toilet paper

19  and defendant Zurawski gave her permission to obtain those items. *Id.* Plaintiff states that while

20  she was retrieving those items, defendant Ebel entered her housing unit and "got in [her] face

21  yelling, spitting, and using abusive language." *Id.* Plaintiff states she turned to defendant

22  Zurawski and asked her to inform defendant Ebel she had been given permission to retrieve the

23  items. *Id.* She states that defendant Ebel then "physically attacked [her] with both of his hands

24  causing pain and swelling in [her] finger, wrist, arm, and bleeding in [her] lower lip." *Id.*

25

REPORT AND RECOMMENDATION - 2

Plaintiff states on May 4, 2018, she filed an emergency grievance related to this incident.[1] Plaintiff states she also called the PREA hotline and left a message on that date. *Id.* She indicates her grievance was deemed not to be an emergency and that after the PREA was reported no one followed up on the allegations. *Id.*

She states that on May 16, 2018, she called the PREA hotline again and left a message and that her PREA claim was then submitted electronically by Lieutenant Pershian. *Id.* On May 16, 2018, plaintiff states she received a kiosk message stating the alleged PREA violation on May 4, 2018, would not be investigated. *Id.* On May 21, 2018, plaintiff states she sent an Ombudsmen review request regarding this incident to the DOC Ombuds Office and on August 14, 2018, received a letter stating her complaint could not be accepted because she "did not exhaust the grievance process." *Id.* Specifically, the letter, attached to plaintiff's complaint, states "the Ombuds policy, DOC 140.500, requires that individuals exhaust all administrative appeals, such as all three levels of the grievance process, before submitting their complaints to this office." Dkt. 6, at 10.

Plaintiff states on May 21, 2018, she also sent a letter to the Attorney General of Washington State regarding the incident asking to press criminal charges against defendant Ebel for officer misconduct and assault. Dkt. 6. She states on July 18, 2018, she sent a Public Disclosure Request to the prison and to Olympia requesting kiosk messages, grievances, incident reports, and phone recorders. *Id.* She states on August 2, 2018, she also reported the incident to the PREA Reporting Office in Colorado. *Id.* She states on August 25, 2018, she asked Lieutenant

---

[1] Plaintiff indicates that another inmate also filed a grievance related to this incident but offers not further information about that other grievance. Dkt. 6.

Rio if she could call the police department and file a police incident report and that her request was denied. *Id.*

Plaintiff asserts that all PREA claims are sent to the superintendent (Deborah Jo Wofford) who is then responsible for the PREA investigation. *Id.* Plaintiff alleges defendant Wofford did not handle the PREA allegations in accordance with PREA DOC policy 490.850. *Id.* Plaintiff asserts "all grievances alleging sexual misconduct are to be forwarded" per that policy. *Id.* Plaintiff asserts she has exhausted the grievance process but also states she has "tried to take grievances to the next level after the PREA investigation and have been told that there is a 5 day timeline to do so." *Id.* She states she has been denied copies of incident reports and grievances. *Id.* She states she has called mental health emergencies and not received treatment. *Id.* She states she is being retaliated against by "officers" and nothing is being done about it. *Id.*

Plaintiff alleges her Fourth Amendment and Thirteenth Amendment rights have been violated as well as the Washington State Public Records Act, R.C.W. 42.56. *Id.* As relief she asks for $100,000.00, "lawyer fees, court fees, charges brought against K.C. Ebel for assault and excessive force, and all other defendants to be reassigned positions with no offender contact. She also asks that PREA not be handled in house and by an outside entity in an effort to stop retaliation against offenders." *Id.*

Defendants now move for summary judgment on several grounds including: that WCCW is not a proper defendant; there is no private right of action under the PREA; plaintiff failed to exhaust her administrative remedies; and none of defendants' actions violated plaintiff's constitutional or federal statutory rights (Dkt. 18). Plaintiff did not file a response to defendants' motion.

1

<u>DISCUSSION</u>

2

## I.    Standard of Review

3

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on

4

file, and any affidavits, show that there is no genuine dispute as to any material fact and that the

5

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

6

entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

7

showing on an essential element of a claim in the case on which the nonmoving party has the

8

burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of

9

fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

10

the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

11

(1986) (nonmoving party must present specific, significant probative evidence, not simply "some

12

metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

13

material fact exists if there is sufficient evidence supporting the claimed factual dispute,

14

requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

15

*Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

16

626, 630 (9th Cir. 1987).

17

## II.    Claims Against State Agency - Washington Corrections Center for Women

18

Defendants move for summary judgment with respect to WCCW on the grounds that, as

19

a state agency, it is not a proper defendant and is immune from claims for damages. Dkt. 18.

20

Plaintiff's § 1983 claims against WCCW are improper because it is a state agency and

21

thus is not considered a "person" within the meaning of § 1983. *Will v. Michigan Dep't of State*

22

*Police*, 491 U.S. 58, 64 (1989) (holding that the term "person" as used in § 1983 did not include

23

a State or State agency). Furthermore, under the Eleventh Amendment to the Constitution of the

24

25

1   United States, neither a state nor a state agency may be sued in federal court without its consent.

2   *Pennhurst St. Sch. & Hosp.* 465 U.S. 89, 100 (1984); *Taylor v. List*, 880 F.2d 1040, 1045 (9th

3   Cir. 1989). While a state may waive its Eleventh Amendment immunity by removing an action

4   to federal court, *see e.g. Pittman v. Oregon, Employment Dep't*, 509 F.3d 1065, 1071 (9th Cir.

5   2007), this is not a removal action.

6       Accordingly, the Court recommends defendants' motion with respect to defendant WCCW

7   be granted and the claims against defendant WCCW be dismissed with prejudice.

8   **III.    PREA Claims**

9       Plaintiff alleges defendant Wofford violated her civil rights by failing to follow DOC

10  policy in handling her PREA claim. Dkt. 6. But there is no private cause of action available to

11  plaintiff under the PREA.[2]

12      A private right of action "to enforce federal law must be created by Congress." *Alexander*

13  *v. Sandoval*, 532 U.S. 275, 286 (2001). Similarly, to state a cognizable claim under 42 U.S.C. §

14  1983, "a plaintiff must assert the violation of a federal *right,* not merely a violation of federal

15  *law.*" *Blessing v. Freestone*, 520 U.S. 329, 340 (1997), *holding modified by Harz v. Borough of*

16  *Spring Lake*, 234 N.J. 317 (2018) (emphasis in original). The PREA "'authorizes the reporting of

17  incidents of rape in prison, allocation of grants, and creation of a study commission,' but there is

18  nothing in the PREA to indicate that it created a private right of action, [or that it is otherwise]

19  enforceable under § 1983." *Watkins v. Tuolumne County Jail*, 2019 WL 95508, at *3 (E.D. Cal.

20  Jan. 3, 2019) (quoting 42 U.S.C. §§ 15601-15609); *Alverto v. Henderling*, 2019 WL 174674

21  (W.D. Wash. Jan. 11, 2019); *see also Hatcher v. Harrington*, 2015 WL 474313, at *4-*5 (D.

22

23  ──────────────

24  [2] The Court notes that plaintiff does not allege that defendant Wofford's actions violated any other specific
    constitutional or federal statutory right.

25

1    Haw. Feb. 5, 2015) (finding the plaintiff's claims that defendants failed to follow PREA

2    guidelines and procedures failed because "[n]othing in the PREA explicitly or implicitly suggests

3    that Congress intended to create a private right of action for inmates to sue prison officials for

4    noncompliance with the Act," and although there appears to be no federal appellate decision

5    addressing this issue, "district courts nationwide have found that PREA does not create a private

6    cause of action that can be brought by an individual plaintiff") (citing cases).

7    　　　　Accordingly, to the extent plaintiff claims defendant Wofford violated her civil rights under

8    the PREA by failing to properly process her PREA claim, defendants' motion for summary

9    judgment should be granted and that claim dismissed with prejudice.[3]

10   **IV.    Retaliation and Inadequate Mental Health Care Claims**

11   　　　　Plaintiff alleges generally that she has been "retaliated against by officers." Dkt. 6. But

12   plaintiff fails to tie her conclusory claim of retaliation to any named defendant or other individual.

13   Defendants move for summary judgment on the grounds that plaintiff fails to establish that they

14   personally participated in any acts of retaliation. Dkt. 18.

15   　　　　To establish liability for a cause of action under Section 1983, a plaintiff must show the

16   defendant, acting under color of state law, personally participated in the alleged deprivation of

17   federal constitutional or statutory rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

18   The plaintiff must allege the defendant, through his or her own individual actions, violated those

19   rights. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012). A person deprives

20   another "of a constitutional right, within the meaning of section 1983, if he does an affirmative

21   act, participates in another's affirmative acts, or omits to perform an act which he is legally

22

23   [3] Plaintiff does not allege separate claims against defendants Zurawski and Ebel for violations of the PREA.
     However, to the extent plaintiff's complaint might be interpreted to raise claims under the PREA against Zurawski
24   and Ebel, those claims should be dismissed with prejudice for the same reason discussed above.

25

1   required to do that *causes* the deprivation of which [the plaintiff complains]." *Leer v. Murphy*,

2   844 F.2d 628, 633 (9th Cir. 1988) (emphasis in the original) (citation omitted).

3        Plaintiff has failed to respond to defendants' summary judgment motion and sets forth no

4   facts in her complaint to show that any of the named defendants engaged in any retaliatory acts

5   against her. Accordingly, as plaintiff fails to raise a genuine issue of material fact in opposition

6   to defendants' motion, the motion should be granted and plaintiff's retaliation claims against the

7   named defendants dismissed with prejudice.

8        Plaintiff also alleges generally that she was seen by mental health and requested follow up

9   treatment and received none. Dkt. 6. However, plaintiff does not identify any individuals

10  (defendants or otherwise) who were responsible for this alleged lack of medical care. *Id.* It is

11  unclear whether plaintiff intends to raise this allegation of inadequate mental health care as a

12  separate claim in her amended complaint and defendants do not specifically move for summary

13  judgment with respect to this issue. But plaintiff was previously advised by this Court that in order

14  to state a claim she must allege facts demonstrating the personal participation of each named

15  defendant in causing the harm she alleges. Dkt. 5. Plaintiff was given an opportunity to file an

16  amended complaint yet her claim regarding inadequate mental healthcare in her amended

17  complaint is entirely conclusory and fails to establish the personal participation of any of the

18  named defendants (or any other individual for that matter).

19       Because plaintiff was previously given an opportunity to amend her complaint, was

20  advised that in order to state a claim she must state facts to show the personal participation of the

21  defendants, and her mental health care claim remains deficient in this respect, it appears to the

22  Court that further amendment would be futile. *See Cato v. United States*, 70 F.3d 1103, 1106

23  (9th Cir. 1995) (A pro se litigant must be given leave to amend his or her complaint, and some

24

25

REPORT AND RECOMMENDATION - 8

1  notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could

2  not be cured by amendment); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th

3  Cir. 2009), *as amended* (Feb. 10, 2009) ("where the plaintiff has previously been granted leave

4  to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district

5  court's discretion to deny leave to amend is particularly broad."); *Hebbe v. Pliler,* 627 F.3d 338,

6  341–42 (9th Cir.2010) (although pro se pleadings are to be liberally construed, a plaintiff must

7  still present factual allegations sufficient to state a plausible claim for relief). Accordingly, the

8  Court recommends that plaintiff's claim of inadequate mental healthcare be dismissed with

9  prejudice against the named defendants pursuant to 28 U.S.C. 1915A[4] for failure to state a claim

10  upon which relief may be granted.

11  **V.    Exhaustion**

12      As to plaintiff's remaining federal claims, defendants allege plaintiff failed to exhaust the

13  available administrative remedies. Dkt. 18. Plaintiff has not filed a response to defendants' motion.

14  Plaintiff alleges generally in her complaint that she has exhausted her remedies but also alleges she

15  has "tried to take grievances to the next level" and has been told that "there is a 5 day timeline to

16  do so." Dkt. 6. She also asserts generally that she has been "denied copies of incident reports and

17  grievances." *Id.*

18

19

20

---

[4] Title 28 **U.S.C. § 1915A** provides:
(a) The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
(b) On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-
(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
(2) seeks monetary relief from a defendant who is immune from such relief.

1    Before a prisoner may bring a civil rights action under 42 U.S.C. § 1983, she must first

2  exhaust all available administrative remedies. Under the Prison Litigation Reform Act of 1995

3  ("PLRA"),

> No action shall be brought with respect to prison conditions under section 1983 of this title,
> or any other Federal law, by a prisoner confined in any jail, prison, or other correctional
> facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion in cases covered by § 1997e(a) is mandatory. *Booth v. Churner*,

532 U.S. 731, 739 (2001). The mere fact a plaintiff has filed an initial grievance under a prison's

grievance policy does not satisfy the PLRA exhaustion requirement; a plaintiff must exhaust *all*

levels of an available grievance procedure before he can initiate litigation. *See id.* at 736-41; *Porter

v. Nussle*, 534 U.S. 516, 524-25 (2002). Even when the prisoner seeks relief not available in

grievance proceedings, notably money damages, exhaustion is still a prerequisite to suit. *Booth*,

532 U.S. at 741. If a claim is not exhausted, it must be dismissed. *McKinney v. Carey*, 311 F.3d

1198, 1199 (9th Cir. 2002).

    Failure to exhaust administrative remedies is properly brought as a summary judgment

motion. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014). Once the defendant proves there was

an available administrative remedy and the offender failed to exhaust the available remedy, the

burden shifts to the plaintiff. The plaintiff must show there was something about his particular

claim which made the "existing and generally available administrative remedies effectively

unavailable to him." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Hilao v.

Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "Exhaustion should be decided, if

feasible, before reaching the merits of a prisoner's claim." *Albino*, 747 F.3d at 1170.

    Defendant's evidence shows inmates in the custody of the Washington State Department of

Corrections ("DOC") may file administrative grievances pertaining to a wide range of issues

related to an inmate's incarceration, including challenging DOC policies, rules and procedures,

REPORT AND RECOMMENDATION - 10

staff conduct, retaliatory conduct, access to medical care, and physical conditions of confinement.

Dkt. 20, Bacetti Decl., ¶¶ 4. Under DOC policy, the grievance procedure consists of four levels of

review. *Id.*, ¶ 7.

- **Level 0** – Complaint or informal level. The grievance coordinator at the prison receives a written complaint from an offender on an issue about which the offender wishes to pursue a formal grievance. At this complaint level, the grievance coordinator pursues informal resolution, returns the complaint to the offender for rewriting, returns the complaint to the offender requesting additional information, or accepts the complaint and processes it as a formal grievance. Routine and emergency complaints accepted as formal grievances begin at Level I. Complaints alleging staff misconduct, such as the Plaintiff's complaint in this case, are initiated at Level II.
- **Level I** – Grievances against policy, procedure, or other offenders, and grievances processed as emergencies. The local grievance coordinator is the respondent at this level.
- **Level II** – Appeal. Offenders may appeal Level I grievances to this level. Staff conduct grievances are also initiated at this level. All appeals and initial grievances received at Level II are investigated, with the prison superintendent being the respondent.
- **Level III** – Appeal. Offenders may appeal all Level II responses except emergency grievances to Department headquarters in Tumwater, where they are reinvestigated. Administrators are the respondents to a Level III grievance.

Baccetti Decl., ¶ 7.

Here, the evidence shows plaintiff has filed eleven grievances during her time in DOC

custody. Dkt. 20, Bacetti Decl., ¶ 9. Defendants present evidence that on May 4, 2018, plaintiff

filed an Offender Complaint (grievance number 18655193) in connection with the May 4, 2018

incident and designated the complaint an "emergency." *Id*. at ¶ 10. In plaintiff's initial complaint

she states, "C/o Z put a roll of toilet paper on the desk for me and I picked it up. While in the

process of getting my five pads Sergeant Ebel came into CCU yelling at me. He told me to put my

pads down because there was no officer. The officer was present however, I still complied. Then

the sergeant reached for my arm and grabbed me." *Id.*, Attachment 2.

Because plaintiff submitted her complaint through emergency channels after standard

business hours it was directed to Shift Lieutenant J. Rio. *Id.*, ¶ 13. Under the Offender Grievance

Program, "emergency" complaints are those that involve a potentially serious threat to the life or

health of an offender or staff member, relate to severe pain being suffered by the offender, or involve a potential threat to the orderly operation of a facility, and their resolution would be too late if handled through routine administrative or grievance channels. *Id.*, ¶ 12. Because the allegations contained in plaintiff's initial Offender Complaint did not meet the criteria of an emergency grievance, plaintiff's "emergency" complaint was downgraded to a non-emergent initial grievance and returned to her. *Id.*, ¶ 13.

Andrea Baccetti is the Grievance Coordinator for WCCW. *Id.*, ¶ 2. Ms. Baccetti also received a copy of plaintiff's initial Offender Complaint and requested additional information from plaintiff in the form of a re-write request. *Id.*, ¶ 14. Plaintiff then re-submitted her complaint as a non-emergent grievance on May 9, 2018. *Id.*, ¶ 15. Plaintiff described the incident in her re-submitted complaint as follows:

> On 5/04/18 the campus was shut down / on lock down. At about 12:30 noon CCU-west pod was escorted to the M.I. Kitchen to pick up lunch. Upon entrance to CCU I (ARMSTEAD) asked c/o Zorowski for toilet paper and pads. While CCU-west pod was still waiting outside CCU for an officer to bring the keys to open the main door to CCU, C/O Zorowski entered the west pod of CCU and sat a single roll of toilet paper on edge of the officers' desk. C/O Zorowski then came to the main entrance of CCU and told me to pick up my supplies upon entrance to west pod. While grabbing my pads Sgt. Ebel came into CCU irate. Sgt. Ebel gave me a directive to put down my pads since an officer was not present. Sgt. Ebel and C/O Zorowski were present. I followed the directive then Sgt. Ebel bear grabbed me by the arm. I told him to get his hands off me. He needs reprimanded for excessive force."

*See id.*, Attachment 3. Plaintiff's re-submitted complaint was determined to be an "Employee Conduct Grievance" under the grievance system (which automatically raises it to a Level II grievance) and an investigation was subsequently conducted. *Id.*, ¶ 16.

Defendants acknowledge that separately from her initial Offender Complaint, on May 4, 2018, plaintiff also contacted the PREA Telephone Hotline, requesting an investigation of the same incident under the PREA. Dkt. 23, Wofford Decl., ¶ 8. In her voicemail plaintiff reported she had been "grabbed by Sgt. Ebel" earlier that day and was told the incident did not constitute

an emergency after reporting the incident to prison staff. *Id.* Defendants submit evidence that on May 21, 2018, a response was issued to plaintiff's PREA complaint entitled "PREA Notification" advising plaintiff that her PREA claim had been reviewed and determined not to be addressable under PREA. *Id.*, ¶ 9, and Attachment 2.

Defendants present evidence that DOC has several policies in place to prevent sexual relations or sexual contact between inmates, or between an inmate and a staff member. *Id.* This includes DOC Policy Number 490.800, "Prison Rape Elimination Procedures" which describes staff sexual misconduct as including any sexual act between an offender and an employee. *Id.*, ¶ 3. According to defendants, DOC investigates and pursues disciplinary action against staff determined to be in violation of the policy. *Id.*, ¶ 4. Defendants also present evidence that all offenders, DOC employees, DOC volunteers and contractors are informed on the law concerning sexual misconduct and the Department's policies prohibiting sexual misconduct between DOC employees, volunteers, contractors and offenders. *Id.*, ¶ 5.[5] As discussed in DOC Policy Number 490.800, the PREA Telephone Hotline is one of several means by which an offender may report sexual misconduct under the Prison Rape Elimination Act (PREA). *Id.*, ¶ 7, and Attachment 1.

Defendants present evidence that a written response to plaintiff's Level II offender complaint was issued on June 8, 2018. *Id.*, ¶ 12. It advised plaintiff that the events reported in her complaint were clearly visible in the video recording of the encounter and that the video evidence did not support her contentions. Dkt. 20, Baccetti Decl., ¶ 16; Dkt. 23, Wofford Decl., ¶ 12. The response, which is signed by WCCW Superintendent Wofford, also advised plaintiff that

---

[5] Defendants also submit evidence that offenders specifically undergo Prison Rape Elimination Act ("PREA") Orientation Training when they are processed into the prison. The orientation discusses the law, what constitutes sexual misconduct, what to do if they are a victim of misconduct or know of someone who is, and how to report it. Dkt. 23, Wofford Decl., ¶ 6.

she had a *right to appeal* the response **by submitting a written appeal to the grievance coordinator within five working days from the date the response was received**. Dkt. 20, Baccetti Decl., ¶ 17; Dkt. 23, Wofford Decl., ¶ 13. Defendants' evidence shows that plaintiff did not thereafter file an appeal. Dkt. 20, Baccetti Decl., ¶ 18; Dkt. 23, Wofford Decl., ¶ 13.[6]

Defendants' evidence also shows that to the extent plaintiff seeks to raise separate claims with respect to defendant Zurawski's alleged failed to perform tier checks after the incident and the alleged denial of access to sanitary napkins and toilet paper, plaintiff has failed to grieve those claims entirely. Dkt. 20, Bacetti Decl., at 3-5. The grievance related to the May 4, 2018, incident discusses only defendant Ebel's alleged use of force and does not mention defendant Zurawski's failure to perform tier checks or that she denied plaintiff access to sanitary napkins and toilet paper. *Id.*[7] And even if these claims against defendant Zurawski could be construed as properly raised in plaintiff's grievance, as noted above, plaintiff failed to timely appeal that grievance to the highest level.

Defendants' evidence shows plaintiff failed to timely appeal the denial of her Level II grievance addressing the May 4, 2018, incident and thus failed to exhaust her available administrative remedies. Based on the evidence, the Court finds defendants carried the initial burden of showing the absence of exhaustion in this case. The undisputed evidence presented by defendants shows: 1) there was a grievance procedure in place at the time of the incident

---

[6] Plaintiff does attach a copy of a kite dated August 9, 2018, to her complaint which asks to take "grievance number 18659369 to the next level." Dkt. 6, at 16. However, defendants' evidence indicates that grievance number 18659369 corresponds to a separate grievance filed on July 10, 2018, not to the grievance addressing the incident on May 4, 2018, which is numbered 18655193. *See* Dkt. 20, Bacetti Decl., at Attachment 1. Even if plaintiff intended to appeal the May 4, 2018, grievance, the kite is dated August 9, 2018, well beyond the 5 days provided in the June 8, 2018 denial of plaintiff's Level II grievance. Dkt. 6, at 16. The Court also notes that the response to the kite dated August 13, 2018, indicated that it was also beyond the timeline to appeal the grievance plaintiff actually cited in the kite (number 18659369), stating plaintiff only had 5 working days to appeal. *Id.*

[7] The Court notes that defendants' evidence indicates that none of plaintiff's grievances were appealed to Level III. Dkt. 23, Bacetti Decl., at Attachment 1.

complained of in the complaint; 2) plaintiff was aware of the grievance process and participated in the grievance process while housed at WCCW; and 3) plaintiff did not complete the grievance process for these claims alleged in her complaint.

The burden now shifts to plaintiff, "who must show that there is something particular in her case that made the existing and generally available remedies effectively unavailable to [her] by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172). Acts by prison officials preventing the exhaustion of administrative remedies may make administrative remedies effectively unavailable. *See Nunez v. Duncan*, 591 F.2d 1217, 1224-25 (9th Cir. 2010). "The ultimate burden of proof, however, remains with the defendants," and the evidence must be viewed in the light most favorable to the plaintiff. *Paramo*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172). The Supreme Court held there are three circumstances in which an administrative remedy is not capable of potential relief:

> First, an administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—i.e., some mechanism exists to provide relief, but no ordinary prisoner can navigate it. And finally, a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation.

*Ross v. Blake,* 136 S. Ct. 1850, 1853–1854 (2016).

But, "the unavailability of administrative remedies due to missed deadlines does not render such remedies 'exhausted' under the PLRA, nor does it excuse a failure to exhaust." *Manley v. Rowley*, 847 F.3d 705, 712 (9th Cir. 2017) (citing *Ngo*, 548 U.S. at 90–93); *accord Nunez*, 591 F.3d at 1229 ("[T]he exhaustion requirement is not satisfied when grievances are dismissed because prisoners missed deadlines or otherwise failed to comply with the grievance policy." (citing cases)); *Marella*, 568 F.3d at 1027 ("[Inmates are] required to 'complete the

administrative review process in accordance with the applicable procedural rules, including

deadlines, as a precondition to bringing suit in federal court.'" (quoting *Ngo*, 548 U.S. at 88));

*Wilson v. Price*, No. 215CV0866KJMEFBP, 2017 WL 5484063, at *6 (E.D. Cal. Nov. 15,

2017), *appeal dismissed sub nom. Wilson v. De La Cruz*, No. 18-15791, 2018 WL 3655856 (9th

Cir. July 17, 2018). Moreover, "vague assertion[s]" that prison officials did not process an

inmate's appeals, or "stopp[ed] them from being processed," are insufficient to create a genuine

factual dispute regarding the availability of a remedy. *Wilson v. Price*, No.

215CV0866KJMEFBP, 2017 WL 5484063, at *6 (E.D. Cal. Nov. 15, 2017), *appeal dismissed

sub nom. Wilson v. De La Cruz*, No. 18-15791, 2018 WL 3655856 (9th Cir. July 17, 2018)

(quoting *Tubach v. Lahimore*, No. 1:10–cv–913 AWI SMS (PC), 2012 WL 4490792, at *3 (E.D.

Cal. Sep. 28, 2012)).

Plaintiff did not file a response to defendants' motion. Plaintiff alleges generally in her

complaint that she has "tried to take grievances to the next level after the PREA investigation and

have been told there is a 5 day timeline to do so." Dkt. 6. But plaintiff was notified on May 21,

2018, that her PREA claim had been reviewed and determined not to be addressable under PREA,

and her Level II grievance was denied on June 8, 2018. It appears that instead of appealing the June

8, 2018, denial of her Level II grievance within 5 days as required by grievance policy and as

instructed in the Level II grievance denial form itself, plaintiff chose to continue to try to raise

this issue as a PREA complaint to other authorities outside of the established grievance channels.

Plaintiff's failure to meet the appeal deadline for her grievance or otherwise comply with the

grievance policy does not render her claim exhausted or excuse her failure to exhaust her available

remedies. *See Nunez*, 591 F.3d at 1229 ("[T]he exhaustion requirement is not satisfied when

grievances are dismissed because prisoners missed deadlines or otherwise failed to comply with

the grievance policy." (citing cases)).

1        Plaintiff also claims generally that she was "denied copies of incident reports and

2  grievances" but fails to identify what incident reports or grievances she is referring to or when and

3  by whom she was allegedly denied copies. Dkt. 6. These vague and conclusory assertions of staff

4  interference in the grievance process are insufficient to raise a genuine issue of material fact as to

5  the availability of the prison grievance procedure.[8] As such, plaintiff has not shown the grievance

6  process was unavailable to her.

7        As the record shows plaintiff did not fully follow the proper grievance procedures available

8  at WCCW, plaintiff has not overcome defendants' showing that plaintiff failed to exhaust

9  administrative remedies available to her. Therefore, the Court concludes plaintiff has not exhausted

10  available remedies regarding the remaining federal claims alleged in the complaint; those claims

11  should be dismissed without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003)

12  *overruled on other grounds by Albino,* 747 F.3d at 1162 ("If the district court concludes that the

13  prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim

14  without prejudice."); *Carrea v. California*, 551 F. App'x 368, 369 (9th Cir. 2014) (remanding for

15  the entry of dismissal without prejudice because the proper remedy for non-exhaustion is

16  dismissal without prejudice).

17        Accordingly, the Court recommends, with respect to plaintiff's remaining federal claims,

18  that defendants' motion for summary judgment (Dkt. 18) be granted and those claims be dismissed

19  without prejudice for failure to exhaust administrative remedies.

20

---

21  [8] *See, e.g., Kidd v. Livingston*, 463 Fed.Appx. 311, 313 (5th Cir. 2012) (per curiam) (conclusory assertions that

22  prison officials did not process grievance "fail[ ] to create a genuine dispute as to [inmate's] exhaustion of this
grievance" (citation omitted)); *Jeffries v. Fields*, No. CV 12–1351 R(JC), 2014 WL 994908, at *18 (C.D. Cal. Mar.

23  10, 2014) ("conclusory" assertion[s] that prison officials "obstructed the remedy process" and "tamper[ed]" with
inmate's grievances are "are insufficient to demonstrate that any failure to exhaust was excused due to misconduct
by prison officials that rendered further administrative remedies unavailable" (citations omitted)).

24

25

**VI.    Washington State Public Records Act (RCW 42.56)**

Plaintiff also generally alleges violations of Revised Code of Washington (RCW) 42.56 although the factual basis for this claim is unclear from plaintiff's complaint. Dkt. 6. The Court should decline to exercise supplemental jurisdiction over this state law claim and dismiss it without prejudice.

A district court has discretion over whether to exercise supplemental jurisdiction over state law claims arising from the same set of operative facts that supports a federal claim. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009) (citing 28 U.S.C. §§ 1367(a), (c)). Ordinarily, when a district court dismisses "all claims independently qualifying for the exercise of federal jurisdiction," it will dismiss all related state claims, as well. *Artis v. District of Columbia*, 138 S.Ct. 594 (2018) (citing 28 U.S.C. § 1367(c)) (2018); *see also Carlsbad Tech.*, 556 U.S. at 639-40; *see Acri v. Varian Assocs., Inc.,* 114 F.3d 999, 1001 n. 3 (9th Cir.1997) (suggesting that a district court may, but need not, decide sua sponte whether to continue exercising supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) once all federal law claims have been dismissed).

Although the court is not required to dismiss the supplemental state law claims, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, fairness, convenience, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130 (1966) ("Needless decisions of state law should be avoided [by federal courts] both as a matter of comity" and to promote "a surer-footed reading of applicable law.").

1       Because the Court is recommending dismissal of all of plaintiff's federal claims against

2  defendants, the Court also recommends declining to exercise supplemental jurisdiction over

3  plaintiff's state law claim and dismissing that claim without prejudice. Plaintiff is, of course, free

4  to re-file that claim in state court, subject to the tolling provisions of 28 U.S.C. § 1367(d).[9]

**VII.    Defendants' Request for a "Strike" Under 42 U.S.C. § 1915(g)**

6       Defendants request that the Court count plaintiff's action as a "strike" under 28 U.S.C. §

7  1915(g)[10] because it is "obviously frivolous." Dkt. 18. Defendants also argue that plaintiff

8  intentionally misled the Court in stating she had exhausted her administrative remedies.

9       The Court should decline to find this action frivolous and should not issue a strike in this

10  case. There is insufficient evidence to demonstrate that the *pro se* plaintiff in this case intended to

11  mislead the Court on the issue of exhaustion. Moreover, because the Court did not reach the merits

12  of several of plaintiff's claims due to her failure to exhaust administrative remedies, it would be

13  inappropriate under these circumstances for the Court to find the entire action frivolous

15     .

---

[9] Title 28 U.S.C. § 1367(d) provides that when a federal court declines supplemental jurisdiction over a state-law claim, the limitations period for that claim "shall be tolled while the claim is pending" in federal court "and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." Thus, where section 1367(d) applies, the period during which a plaintiff's state-law claims were pending in federal court will not be subtracted from the applicable State limitations period.

[10] 28 U.S.C. § 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the in forma pauperis provision] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

"The dismissals described in this provision are commonly referred to as 'strikes.'" *Harris v. Mangum*, 863 F.3d 1133, 1139 (9th Cir. 2017); *see, e.g.*, *El-Shaddai v. Zamora*, 833 F.3d 1036, 1042 (9th Cir. 2016).

REPORT AND RECOMMENDATION - 19

1     **In Forma Pauperis Status on Appeal**

2          The Court must also decide whether plaintiff's *in forma pauperis* status should continue

3     on appeal. *See* 28 U.S.C. §1915(a)(3) ("an appeal may not be taken *in forma pauperis* if the trial

4     court certifies in writing that it is not taken in good faith").  The Court must determine whether

5     appeal is frivolous or malicious, or whether it fails to state a claim on which relief may be

6     granted.  *See* 28 U.S.C. §1915(e)(2)(B)(i)&(ii).

7          While the Court was not persuaded on the merits of several of plaintiff's claims and does

8     not reach the merits of several others due to plaintiff's failure to exhaust her administrative

9     remedies, there is no evidence that her appeal would be frivolous or taken in bad faith.

10    Accordingly, the Court recommends that *in forma pauperis* status should continue on appeal.

11    **VIII.    Conclusion**

12         For the above stated reasons, the undersigned recommends the Court GRANT defendants'

13    motion for summary judgment (Dkt. 18). The Court should dismiss plaintiff's claims against

14    defendant Washington Corrections Center for Women (WCCW) and her claims regarding

15    alleged PREA violations WITH PREJUDICE. The Court should dismiss plaintiff's claim

16    regarding inadequate mental health care against the named defendants WITH PREJUDICE

17    pursuant to 28 U.S.C. § 1915A for failure to state a claim. The Court should dismiss plaintiff's

18    remaining federal claims against the remaining defendants, Ebel, Zurawski, and Wofford,

19    WITHOUT PREJUDICE for failure to exhaust administrative remedies. The Court should

20    decline to exercise supplemental jurisdiction over plaintiff's remaining state law claim for

21    violation of the Washington State Public Records Act (RCW 42.56) and dismiss that claim

22    WITHOUT PREJUDICE. Finally, the Court should decline to issue a strike under 42 U.S.C. §

23    1915(g).

24

25

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on **January 3, 2020**, as noted in the caption.

Dated this 12th day of December, 2019.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 21